# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# GREAT FALLS DIVISION

| | |
|---|---|
| STEPHANIE CATARAHA, as the personal representative of the Estate of STEPHEN HAMILTON,<br><br>Plaintiff,<br><br>vs.<br><br>ELEMENTAL PRISM, LLC, Herb Stomp,<br><br>Defendants. | CV-17-128-GF-BMM<br><br><br>**ORDER ON DEFENDANT'S MOTION TO DISMISS** |

Defendant Elemental Prism, LLC, d/b/a Herb Stomp, ("Elemental Prism"), moves this Court to dismiss the Complaint (Doc. 1) of Plaintiff Estate of Stephen Hamilton ("Estate") for lack of personal jurisdiction over them. (Doc. 3 at 1-2.)

## I. BACKGROUND

The Estate alleges in the Complaint that Elemental Prism, an Oregon limited liability company that sells herbal botanicals, spices, and other natural products, violated M.C.A. § 27-1-719 (2) and (3) by selling "a dangerous and defective product unreasonably dangerous to its users and consumers." (Doc. 1 at 2.) The Estate alleges that Elemental Prism sells Kratom, an herb that can be fatal if ingested. *Id.* The Estate alleges that Elemental Prism extensively marketed Kratom

1

for external use only. *Id.* The Estate alleges that Elemental Prism knew or should have known, however, that users and consumers like Stephen Hamilton ingested Kratom for pain relief. *Id.*

The Estate alleges that Hamilton purchased quantities of Kratom from Elemental Prism in March of 2017. *Id.* Hamilton died on March 25, 2017. *Id.* The Estate alleges that an overdose of mitragynine, a substance found in Kratom, caused Hamilton's death. *Id.* The Estate further alleges that Elemental Prism failed to warn consumers of these dangers. *Id.* The Estate alleges that Elemental Prism's violation of M.C.A. § 27-1-719 constituted the legal cause of the death of Hamilton. *Id.*

## II. LEGAL STANDARD

Federal courts generally look to state law to determine the bounds of their jurisdiction over parties. *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (internal quotation and citation omitted). Montana follows a two-step test for determining whether a Montana court may exercise personal jurisdiction over a nonresident defendant. *Milky Whey, Inc. v. Dairy Partners, LLC*, 342 P.3d 13, 17 (Mont. 2015). The Court first must determine whether personal jurisdiction exists under M.R. Civ. P. 4(b)(1). *Id.* A party may be "found within the state of Montana" and subject to general jurisdiction, or specific jurisdiction may exist if the claim for relief arises from any of the acts listed in Rule 4(b)(1)(A-G). *Id.* The second step

requires the court to determine whether the exercise of personal jurisdiction conforms with "the traditional notions of fair play and substantial justice embodied in the due process clause." *Cimmaron Corp. v. Smith*, 67 P.3d 258, 260 (Mont. 2003) (citing *Threlkeld v. Colorado*, 16 P.3d 359, 361 (Mont. 2000)).

When opposing a defendant's motion to dismiss for lack of personal jurisdiction, "the plaintiff bears the burden of establishing that jurisdiction is proper." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (citation omitted); *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Plaintiffs cannot "rest" on the bare allegations of the Complaint. *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977). They must "come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." *Id.*

### III. DISCUSSION

#### A. General Jurisdiction

To be "found" within Montana for the purpose of general jurisdiction, "it is necessary that the defendants' activities are 'substantial' or 'systematic and continuous.'" *Milky Whey, Inc.*, 342 P.3d at 17 (citation omitted). The Supreme Court has clarified this to mean that a state court may exercise general jurisdiction over out-of-state corporations when their "affiliations with the state are so 'continuous and systematic' as to render them essentially at home in the forum

3

state." *BNSF Ry. Co. v. Tyrrell*, ___ U.S. ___, 137 S.Ct. 1549, 1558 (2017) (citation omitted).

Elemental Prism is registered as an Oregon limited liability company and maintains its principal place of business in Portland, Oregon. (Doc. 4 at 8.) Elemental Prism conducts business in Montana through online sales. Elemental Prism cannot be said to be "at home" in Montana, for purposes of establishing general personal jurisdiction within the parameters established in *Tyrrell*. Further, the Estate does not allege or argue that general jurisdiction exists over Elemental Prism. (Doc. 10 at 4.) The Estate argues instead that this Court possesses "long-arm jurisdiction" because Elemental Prism transacted business and committed torts in Montana. M.R. Civ. P. 4(b)(1)(A) and (B). (Docs. 16, 21.) The Court will focus its analysis on the former provision.

B. Specific Jurisdiction

The Estate primarily relies on 4(b)(1)(B) to establish personal jurisdiction, but the more pertinent section would be 4(b)(1)(A). A defendant may be subject to specific jurisdiction under Rule 4(b)(1)(A) if the claim arises from its "transaction of any business within Montana." M.R. Civ. P. 4(b)(1)(A). The "transacting business" provision requires "far fewer contacts with the forum state than are necessary to support general jurisdiction on the theory that the defendant is 'doing business' in the forum state." *Milky Whey, Inc.*, 342 P.3d at 18 (citing 4A Wright &

4

Miller, § 1069.3 at 156-61). Factors to be considered when analyzing this provision include "the defendant company's local negotiations for various types of commercial transactions, the solicitation of business within the state, prior litigations in the forum, the presence of agents in the state, and the existence of ongoing contractual relationships with residents of the forum state." *Id.*

The Montana Supreme Court determined in *Milky Whey, Inc.* that the court lacked specific jurisdiction because the defendant never sold any product or engaged in the performance of any service in Montana. *Id.* at 19. The defendant also did not engage in e-commerce. *Id.* The defendant operated a website, but the plaintiff did not allege that it had interacted with the website in any way.

The Montana Supreme Court determined in *Nelson*, by contrast, that the defendant had transacted business in Montana. The court cited the defendant's lengthy contractual relationship with another Montana business, its negotiation of a contract with the Montana plaintiff, and its arrangement of a contractual relationship between two Montana businesses. *Id.* at 20 (citing *Nelson v. San Joaquin Helicopters*, 742 P.2d 447, 450 (Mont. 1987)). These factors established a relationship that proved more extensive than "a few phone calls back and forth between the parties." *Id.* These factors proved sufficient to find "purposeful interjection into Montana" by the defendant and the transaction of business in Montana. *Id.*

The Estate cites *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119 (W.D. Pa. 1997), to support personal jurisdiction. (Doc. 21 at 2.) There the district court addressed whether the defendant's conducting of electronic commerce with Pennsylvania residents constituted the purposeful availment of doing business in Pennsylvania. *Id.* at 1126. The district court concluded that it did. The contact had not been random or fortuitous. The defendant chose to process Pennsylvania residents' applications despite being under no obligation to sell its services to out of state residents. *Id.* The defendant freely chose to do so, presumably in order to profit from such transactions. *Id.*

Elemental Prism has been involved in no prior litigation in Montana. (Doc. 4-1 at 2.) Elemental Prism's employees all live and work in Oregon. *Id.* Elemental Prism operates a retail store in Portland, Oregon. *Id.* at 3. Elemental Prism sells products over the phone and maintains a website, however, that facilitates online sales. *Id.*

Elemental Prism shipped 41 orders to Montana in 2017, 47 orders to Montana in 2016, and 42 orders to Montana in 2015. *Id*. Elemental Prism's website advises that it ships online sales via USPS. Of these sales to Montana, the Estate contends that Elemental Prism shipped 16 orders to Hamilton between October 17, 2015 and March 20, 2017. (Doc. 22 at 2.)

The Estate further points to the fact that major credit card companies do not honor purchases of Kratom. *Id.* Elemental Prism instead directs customers to complete online transactions up to the point of purchase. *Id.* The customers then call Elemental Prism to give the credit card information over the phone. *Id.*

The Estate further alleges that Elemental Prism occasionally would send free samples of new Kratom products to Hamilton to try. *Id.* Finally, the Estate contends that when Hamilton expressed concern about the product causing illness, Elemental Prism sent a test kit and communicated the results directly to Hamilton. (Doc. 10 at 13.)

Taking all of the Estate's well-pled allegations as true, it does not appear beyond doubt that the Estate has failed to establish that Elemental Prism transacted business within Montana. Elemental Prism sold and shipped its products directly into Montana, unlike the defendant in *Milky Whey, Inc*. Elemental Prism processed online orders. It worked with Montana residents to facilitate credit card transactions. Elemental Prism also allegedly reached out to Montana customers, such as Hamilton, by sending free samples and test kits. Similar to the defendant in *Zippo Mfg. Co.*, Elemental Prism chose to operate a website and a phone number that it made available to out of state residents and chose to process their orders. The Court finds that these factors prove sufficient to establish that Elemental Prism transacted business within Montana. *Zippo Mfg. Co.*, 952 F.Supp. at 1126-27.

## C. Due Process Requirements

The Court next must assess how the exercise of jurisdiction over Elemental Prism would comport with principals of due process. *Buckles v. Continental Res., Inc.*, 402 P.3d 1213, 1218 (Mont. 2017). Specific jurisdiction depends on the "relationship among the defendant, the forum, and the litigation," and on whether the defendant's "suit-related conduct" created a substantial connection with the forum state. *Id.* at 1217 (quoting *Tackett v. Duncan*, 334 P.3d 920 (Mont. 2014)).

The Montana Supreme Court in *Simmons* adopted the Ninth Circuit's three-factor due process test to evaluate the appropriateness of exercising specific jurisdiction over a foreign defendant:

> (1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking its laws;
> (2) The claim must be one which arises out of or results from the defendant's forum-related activities; and
> (3) Exercise of jurisdiction must be reasonable.

*Simmons v. Montana*, 670 P.2d 1372, 1378 (Mont. 1983). The Court confirmed the use of this due process test in *Buckles*. *Buckles*, 402 P.3d at 1218.

The Montana Supreme Court has determined that the plaintiff need not demonstrate each of the three elements to establish jurisdiction. *Bunch v. Lancair Int'l Inc.*, 202 P.3d 784, 795 (Mont. 2009). Once the plaintiff demonstrates that the defendant has purposefully availed itself of the privilege of conducting activities in

Montana, a presumption of reasonableness arises, which a defendant can overcome only by presenting a compelling case that jurisdiction would be unreasonable. *Id.*

### 1. Purposefully directed activities to or availed itself to the benefits of Montana

The Ninth Circuit uses a "purposeful direction test" in tort suits. *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017) (citation omitted). Purposeful direction requires the plaintiff prove the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* (citation omitted). A defendant's contacts with the state cannot be based on the "random, fortuitous, or attenuated" contacts he makes by interacting with other persons affiliated with the state. *Walden v. Fiore*, 571 U.S. 277, 286 (2014) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

An intentional act is one denoting an external manifestation of the actor's will and does not include any of its results, even the most direct, immediate, and intended. *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017). The Supreme Court determined in *Calder* that the intentional acts committed by the reporter and editor were the researching, writing, editing, and publishing of an allegedly libelous tabloid news article, all of which occurred in Florida. *Calder v. Jones*, 465 U.S. 783, 789 (1984); see also *Schwarzenegger*, 374 F.3d at 806 (applying the test). The Supreme Court ultimately determined jurisdiction would

be proper in California based on the 'effects' that the defendant's conduct in Florida caused in California. *Calder*, 465 U.S. at 789. Elemental Prism committed an intentional act when it mailed Kratom to residents such as Hamilton in Montana.

A court must consider two factors in determining whether a party aimed an action at the forum state. *Morrill*, 873 F.3d at 1143. The relationship must arise out of contacts that the "defendant himself" creates with the forum state. *Walden*, 571 U.S. at 284 (citation omitted). Further, the "minimum contacts" analysis looks to the defendant's contacts with the forum state itself, rather than the defendant's contacts with persons who reside there. *Id.* at 285 (citation omitted).

In *Walden*, a DEA agent seized cash from two Nevada gamblers in an airport in Georgia before they could board a flight to Nevada. *Id.* at 279. The gamblers filed suit in their home state of Nevada on the basis that the agent had crafted a fraudulent affidavit in support of the seizure. *Id.* at 281. The Supreme Court determined that the Nevada court lacked jurisdiction because the agent had not expressly targeted the state of Nevada. *Id.* at 289-90. The agent "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada." *Id.* at 289.

Elemental Prism equates the case at hand with *Walden*, as noted by the assertion that "the only connection with Montana mentioned in the Complaint is the fact that

Stephen Hamilton resided in Montana." (Doc. 4 at 25.) The Court disagrees. Physical entry into the state – either by the defendant in person or through an agent, goods, mail, or some other means – qualifies as a relevant contact. *Walden*, 571 U.S. at 285 (citation omitted). Elemental Prism's products did not happen to enter Montana through the streams of commerce. Elemental Prism processed orders from Montana residents and mailed product into Montana on at least 130 occasions. These interactions establish that there was contact expressly aimed at the forum state that cannot be dismissed as random, fortuitous, or attenuated.

With regard to the third element of the purposeful direction test, the notion that some injury to Hamilton could occur in Montana proved foreseeable in light of the fact that Elemental Prism mailed Kratom directly into Montana. The FDA has exercised jurisdiction over Kratom as an unapproved drug and actively interdicts shipments of Kratom entering the United States. (Doc. 21 at 7.) Further, when Hamilton expressed concern about Kratom causing illness, Elemental Prism sent a test kit for Hamilton to use. (Doc. 10 at 13.) Finally, it is undisputed that harm did indeed occur in the forum state when Hamilton died of mitragynine concentration.

### 2. Forum-related activities

The Estate's claims directly arise out of or relate to Elemental Prism's business activities in Montana.

### 3. Reasonableness

The third prong of the due process analysis requires that the exercise of jurisdiction must be reasonable. The Montana Supreme Court has set forth seven nonexclusive factors to be considered when examining the reasonableness of jurisdiction:

(1) The extent of defendant's purposeful interjection into Montana;
(2) The burden on defendant of defending in Montana;
(3) The extent of the conflict with the sovereignty of defendant's state;
(4) Montana's interest in adjudicating the dispute;
(5) The most efficient resolution of the controversy;
(6) The importance of Montana to plaintiff's interest in convenient and effective relief; and
(7) The existence of an alternative forum.

*Simmons Oil Corp. v. Holly Corp.*, 796 P.2d 189, 196-97 (Mont. 1990). As noted above, the burden falls on the defendant to overcome a presumption of reasonableness by presenting a compelling case that jurisdiction would be unreasonable. *Bunch*, 202 P.3d at 795.

First, Elemental Prism maintains that it did not "purposefully direct" its activities at Montana, and even if it did, it was only a very limited amount of contact. (Doc. 4 at 27.) As discussed above, Elemental Prism's contacts with Montana cannot be characterized as random, fortuitous, or attenuated. Elemental Prism's shipment of approximately 130 orders to Montana in 3 years proves significant. This factor weighs in favor of exercising jurisdiction.

Second, Elemental Prism contends that the burden to defend itself in Montana would be substantial and unfair. (Doc. 4 at 27.) Elemental Prism cites to

the burden of having members and employees travel to Montana to defend at trial. *Id.* Elemental Prism employs eight people, five of whom work part time. (Doc. 4-1 at 2.) The United States Supreme Court has observed that the burdens imposed on defendants to defend lawsuits in a foreign state have diminished markedly through the years. *Simmons* 670 P.2d at 1383 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292-93 (1980)). The Court does not find this burden to be unreasonable. This factor weighs in favor of exercising jurisdiction.

Third, Elemental Prism concedes that "regardless of where this case is adjudicated, the sovereignty of the other state would be minimally and equally impacted." (Doc. 4 at 27.) Further, Elemental Prism concedes that there appears to be no material difference between Montana's and Oregon's laws regarding product liability actions. *Id.* This factor proves neutral at best.

Fourth, Elemental Prism asserts that this factors weighs against Montana exercising jurisdiction. Elemental Prism cites the minimal number of shipments to Montana, the fact that Stephanie Cataraha resides in California, and Oregon's interest in protecting businesses from costly litigation in foreign forums. *Id.* at 28-29. Montana courts possess interest in allowing Montana plaintiffs to seek restitution for tortious conduct. *Simmons*, 670 P.2d at 1383 (citation omitted). Further, approximately 130 shipments into Montana over a period of 3 years proves sufficiently significant for Montana courts to be interested in adjudicating

the dispute. Oregon's interest is not relevant when weighing this factor. This factor favors Montana exercising jurisdiction.

Fifth, Elemental Prism asserts that the Ninth Circuit has primarily looked to the location of witnesses and evidence in evaluating the efficiency of the forum. (Doc. 4 at 29.) Elemental Prism contends that all of Elemental Prism's employees and documentary evidence is located in Oregon. *Id.* The Estate contends that almost all witnesses and evidence exists in Montana. (Doc. 10 at 16.) Witnesses are likely located in both states, as well as other evidence including Elemental Prism's documentation and the Estate's autopsy and lab results. Accordingly, this factor does not weigh heavily in favor of either side.

Sixth, regarding the importance of the forum to the plaintiff's interest in relief, Elemental Prism reasserts the fact that the personal representative of the estate, Stephanie Cataraha, resides in California. (Doc. 4 at 29.) Elemental Prism also asserts that the claims in this litigation can be effectively remedied in Oregon. (Doc. 16 at 15.) The Estate concedes that Cataraha lives in California. (Doc. 10 at 16.) The Estate argues, however, that Cataraha serves as the personal representative of Hamilton's estate in Montana and further points to the fact that Hamilton's parents also live in Montana. *Id.* In considering Elemental Prism's point that Cataraha resides in California, the Court does not see how litigating in Oregon would provide the plaintiff more convenient or effective relief than

litigating in Montana. This factor weighs in favor of Montana exercising jurisdiction.

Finally, it is the plaintiff's burden to prove the unavailability of an alternative forum. *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1490 (9th Cir. 1993). The Estate concedes that Oregon is an alternative forum. (Doc. 10 at 16.) This factor weighs in favor of Montana not exercising jurisdiction.

The court concludes, based on these factors, that Elemental Prism has failed to present a compelling case that the exercise of jurisdiction would not comport with fair play and substantial justice and would thus be unreasonable.

## I. CONCLUSION

Montana's long-arm statute reaches Elemental Prism. Exercising specific personal jurisdiction over Elemental Prism does not offend due process requirements.

## II. ORDER

Accordingly, IT IS ORDERED that Defendant's motion to dismiss for lack of personal jurisdiction (Doc. 3) is DENIED.

DATED this 17th day of July, 2018.

_____
Brian Morris
United States District Court Judge