TORGER OAAS
ATTORNEY AT LAW
618 West Main; Suite 201
Post Office Box 76
Lewistown, Montana 59457
(406) 538-2338
oaaslaw@midrivers.com
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| STEPHANIE CATARAHA, as the personal representative of the Estate of STEPHEN HAMILTON,<br><br>Plaintiff,<br><br>vs.<br><br>ELEMENTAL PRISM, LLC, Herb Stomp,<br><br>Defendants. | CV-17-128-GF-BMM<br><br>**PLAINTIFF'S BRIEF IN SUPPORT OF PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE STEPHEN HAMILTON'S USE OF METH AND HEROIN ON THE BASIS OF RULES 401 AND 403 OF THE FED. R. OF EVID.** |

## BACKGROUND

The relevant background facts with respect to this motion are:

1) Stephen Hamilton's autopsy showed he had no illicit substances in his body at the time of death. No opioids, no heroin, no meth, and even no alcohol. (Ex. 1)

2) During his adult life from 1999 until he died on 3/25/17, Stephen Hamilton was addicted to the prescription pain killers Oxycodone and

-1-

Oxycontin. He also abused alcohol. (Plaintiff's expert report) (Ex. 2)

3) Stephen Hamilton was in a motor vehicle accident in 1999 in Billings. He was a passenger in a motor vehicle that was broadsided at a high rate of speed. He suffered a neck injury which required a cervical fusion. At that time (and not before), Stephen Hamilton was prescribed large amounts of the "Oxys" Oxycodone and Oxycontin and became addicted. (Cataraha depo. p. 78-80) (Ex. 3)

4) Plaintiff's expert witness will testify that Stephen Hamilton suffered from that time up to his death from OUD (Opiate Use Disorder) and from alcohol use disorder. Plaintiff's expert as well as family members will testify that Stephen Hamilton's ongoing neck pain is what led him to try Kratom. (Cataraha depo. p. 48, 49) (Ex. 4); Expert report of Galbis-Reig (Ex. 5)

5) Stephen Hamilton had a very good work history until 2013. From that time, he only worked part-time and at the time of his death was (1) working part-time at his parents' furniture store and (2) almost full-time caring for his elderly grandmother so, in part, his mother could spend more time working at the store (Cataraha depo. pp. 197, 198). (Ex. 6)

6) Between 1999 and 2015, Stephen Hamilton used meth and heroin. Although there is no evidence to show precisely what the extent of his use was, his self-admissions indicate limited use of heroin and his meth use ended in February, 2015. (Ex. 7)

7) There is absolutely <u>no evidence</u> expert or otherwise that showed that Stephen Hamilton's lack of ability to work full-time after 2013 was due to his heroin or meth use.

8) In fact, when Stephen Hamilton applied for Social Security Disability Benefits[1] he clearly indicated that the main reasons he felt he was disabled from work were:

> 1. Neck pain from the 1999 motor vehicle accident and subsequent surgery; and

---

[1] Stephen Hamilton application for Social Security Disability Benefits was denied (Ex. 2)

2. Diabetes (Ex. 8)

9) Dr. Forke was Stephen Hamilton's local Lewistown physician. In February, 2017, he noted that Stephen Hamilton's narcotic abuse was "in remission" six weeks before his death. (Ex. 9).

10) Stephen Hamilton had foot surgery related to his diabetes in November of 2016 and February of 2018. These surgeries were done by Lewistown podiatrist Dr. Brian Church. Stephen Hamilton denied using recreation or street drugs on his initial patient questionnaire for Dr. Church dated 7/25/16 (Ex. 10).

11) Stephen Hamilton went to inpatient treatment at Rocky Mountain Treatment Center in June of 2015. He disclosed that he had used heroin in the past four (4) times only; amphetamines-stimulants which included speed, meth, crank and uppers once every 2 weeks with his last use being in February of 2015. It is to be noted that Stephen Hamilton was diagnosed with ADHD and was prescribed Adderall for that condition (Ex. 7) so whether he was describing legal or illegal use is unknown.

12) Stephen Hamilton returned voluntarily to Rocky Mountain Treatment Center in August, 2016. His drug use questionnaire indicated he had not used meth since February 2015 or any other street drugs after that date. (Ex. 7)

13) There is no evidence that Stephen Hamilton used heroin or meth after February, 2015.

Plaintiff takes the position that Stephen Hamilton's admitted meth and heroin use is too remote to be relevant. This argument is strengthened by the fact that these drugs were not present at autopsy, nor is there any evidence that use of these drugs contributed to his inability to work full-time since 2013. Plaintiff further argues that Rule 403 Federal Rules of Evidence allows

-3-

the court to refuse or admit evidence if its prejudice outweighs its probable value.

There is no question that evidence that Stephen Hamilton used street drugs like heroin or meth is **_EXTREMELY PREJUDICIAL_**. Given there is no connection with the use of these drugs to his lack of full-time work prior to his death, this evidence should be excluded.

Plaintiff anticipates that Defendants will argue the following:

1) Stephen Hamilton's use of heroin and meth shows that Stephen Hamilton engages in "high risk" behavior and therefore would have ignored any and all warnings on Kratom packages (page 3 of Esser's report; Ex. 11);

2) That Stephen Hamilton's past drug use causes him to have a shorter life and work life expectancy (Esser report pp. 12, 13). (Ex. 11)

The first flaw in Esser's expert opinions on this point is that Stephen Hamilton had quit using meth and heroin over two (2) years before he died. Therefore, Esser's use of these "facts" do not support his conclusion and would cause extreme prejudice to the Plaintiff's case.

The second flaw in Esser's expert opinions on this issue is that he does not cite any evidence in the record that Stephen Hamilton's less than full-time work after 2017 was due to meth or heroin use.

Plaintiff respectfully requests that this motion be granted.

DATED this 27th day of September, 2019.

/s/ *Torger Oaas*
TORGER OAAS
Attorney for Plaintiff